UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LISA DAUNIE                                          CIVIL ACTION

VERSUS                                              NO. 16-12782

NANCY A. BERRYHILL, ACTING                          SECTION "J" (2)
COMMISSIONER OF SOCIAL SECURITY[1]

**FINDINGS AND RECOMMENDATION**

Plaintiff, Lisa Daunie, seeks judicial review pursuant to Section 405(g) of the Social

Security Act (the "Act") of the final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying plaintiff's claim for disability insurance

benefits ("DIB") under Title II of the Act.  42 U.S.C. § 423.  This matter was referred to

a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Daunie filed her application for DIB on July 3, 2013, alleging disability since

October 1, 2012, due to lumbar spondylosis[2] and anxiety disorder.  (Tr. 188).  After her

claims were denied at the agency level, she requested a hearing before an Administrative

---

[1]Counsel for the Commissioner has advised the court that Nancy A. Berryhill is Acting Commissioner of the Social Security Administration as of January 23, 2017.  Pursuant to Fed. R. Civ. P. 25(d), Berryhill should be substituted for Carolyn W. Colvin as the defendant in this matter.  By reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), no further action needs to be taken.

[2]Spondylosis is "[a]nkylosis of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature."  Stedmans Medical Dictionary (updated Nov. 2014) (on Westlaw at Stedmans Medical Dictionary 840410).  Ankylosis is "[s]tiffening or fixation of a joint as the result of a disease process, with fibrous or bony union across the joint; fusion."  Id. at 43650.

Law Judge (ALJ), which was held on March 27, 2014. (Tr. 57-78). The ALJ deferred a determination and sent Daunie for a consultative examination with an orthopedic surgeon. After the examination, a supplemental hearing was held on September 24, 2015, at which a medical expert testified. (Tr. 39-55). The ALJ issued a decision denying plaintiff's application on February 6, 2015. (Tr. 22-36). After the Appeals Council denied review on June 2, 2016, the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1-7).

Plaintiff filed a timely memorandum in support of her appeal. Record Doc. No. 17. Defendant filed a timely reply memorandum. Record Doc. No. 22.

II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.    The Appeals Council erred by failing to consider new and material evidence submitted to it that is dated after the ALJ's decision.

B.    The ALJ erred at steps 2 and 3 of the sequential evaluation by failing to consider the medical evidence properly and failing to find that Daunie meets Listing 1.04(A) for disorders of the spine.

C.    The ALJ improperly weighed the medical evidence when determining plaintiff's residual functional capacity.

III.    ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.    Daunie has severe impairments consisting of degenerative disc disease of the lumbar and cervical portions of the spine.

2.    She does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1, specifically including Listing 1.04.

3.      She has the residual functional capacity to perform sedentary work, except that she cannot climb ladders, ropes, or scaffolds; and can stoop, kneel, crouch and crawl only occasionally.

4.      Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  However, her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

5.      She cannot perform her past relevant work as a courier or warehouse worker/local delivery person.

6.      Considering her age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that Daunie can perform, such as information clerk, general clerk and surveillance system monitor.

7.      She was not under a disability from October 1, 2012, the alleged onset date, through the date of the ALJ's decision.

(Tr. 24-25, 29-31).

IV.    ANALYSIS

A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. Halterman ex rel. Halterman v. Colvin, 544 F. App'x 358, 360 (5th Cir. 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  McCaskill v. Dep't of Health & Human Servs., No. 15-60304, 2016 WL 700220, at *4 (5th Cir. Feb. 22, 2016) (citing Perez, 415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

4

To be considered disabled and eligible for DIB, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2014). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[3] Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501

---

[3]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.    Factual Background

Daunie testified at the first hearing on March 27, 2014, that she is 47 years old, lives with a roommate in an apartment and attended the tenth grade, but did not graduate or obtain a GED or vocational training. (Tr. 60). She said she last worked on October 5, 2012, as a warehouse person and driver. She stated that she was in that job for about a year

before she was injured in a motor vehicle accident[4] and she previously worked for FedEx for 15 years. She said she receives worker's compensation as a result of the accident. She testified that she quit FedEx because she wanted an easier job with shorter hours. (Tr. 61).

Plaintiff stated that she has not received much medical treatment since the accident because her worker's compensation carrier "denies a lot." She testified that her back and neck were injured in the accident and that she sees Dr. Eric Royster,[5] an anesthesiologist and pain management specialist, monthly. Daunie stated that Dr. Royster prescribes medications and sometimes gives her injections. She said she has had injections in her shoulder and she "just kind of tak[es] it easy because it affects my legs and all." She said that her feet go numb, she has muscle spasms and a feeling like "a lot of needles in" her legs and calves, and the pain goes into her hip and "private areas." (Tr. 62).

Daunie testified that worker's compensation sent her to orthopedic surgeons, Dr. Gordon Nutik,[6] initially for treatment about one month after the accident and later to Dr. Alexis Waguespack.[7] Plaintiff said she last saw Dr. Waguespack a few months before the

---

[4]Although plaintiff did not testify about the date of the accident, the medical records indicate that it occurred on October 1, 2012. (Tr. 278-79).

[5]The transcript phonetically misspells Dr. Royster's name as "Reuster."

[6]The transcript phonetically misspells Dr. Nutik's name as "Nudic."

[7]The transcript phonetically misspells Dr. Waguespack's name as "Wagasbach." Although Daunie asserts in her memorandum that Dr. Waguespack is a neurosurgeon, the record does not support that assertion. According to Dr. Waguespack's website, she "is a board-certified orthopedic surgeon." Spinecare Medical Group.net (Spinecare Medical Group 2017), http://www.spinecaremedicalgroup.net/about-us/meet-our-team/ (visited June 23, 2017).

hearing and that Dr. Waguespack wanted her to have an EMG (electromyography).  The ALJ stated that the medical records contain a note that Daunie saw Dr. Waguespack in December 2013, but that there were no records from Dr. Waguespack in the exhibits.  (Tr. 63-64).

Plaintiff testified that, on a typical day, she sits on the sofa until she has cramping, walks to the kitchen and cleans up a little until she has to stop, and tries to sleep for a couple of hours at a time.  She said she always has to stop and pace herself.  She stated that she might drive to her mother's house.  (Tr. 64).  She said that her roommate does all the cooking and most of the cleaning and shopping, although Daunie goes to the store herself "for a few little things."  She testified that she visits her mother only, has not been to church "in a while" and has no hobbies.  She said she used to jog around the park with her dog, but now she just hangs around the house and has been "really bummed out."  (Tr. 65).

Daunie stated that she takes prescription medications Norco,[8] Soma,[9] Lexapro[10] and lisinopril[11] for high blood pressure with no side effects from the medicines. (Tr. 65-66). She testified that she can walk one-eighth of a mile before her ankles and calves start to swell and can lift a gallon of milk, but nothing heavier. She said she sometimes can stand "for a little while," such as to wash dishes and clean the kitchen, and other times she "just want[s] to sit on the ground." When asked how long she could sit, she stated that she was having trouble sitting right now. (Tr. 66).

Upon questioning by her attorney, Daunie testified that she feels pain almost daily from the top of her back to the tailbone. She said that "every now and then" the pain is ten on a scale of one to ten, with ten being the worst, but that the pain is seven to eight with medication on an average day. (Tr. 67). She stated that she has pain in her shoulder and

---

[8]Norco (generic name: acetaminophen and hydrocodone) is used to relieve moderate to moderately severe pain. Hydrocodone is an opioid pain medication and acetaminophen is a less potent pain reliever that increases the effects of hydrocodone. Drugs.com (Cerner Multum, Inc. 2000-2017), https://www.drugs.com/norco.html (visited June 20, 2017).

[9]Soma (generic name: carisoprodol) is "used to relieve discomfort associated with short-term, painful musculoskeletal conditions." PDR.net (PDR, LLC 2017), http://www.pdr.net/pdr-consumer-monograph/soma?druglabelid=2128&ConsumerId=1409 (visited June 20, 2017).

[10]Lexapro (generic name: escitalopram oxalate) is a selective serotonin reuptake inhibitor used to treat major depressive disorder and generalized anxiety disorder. Id., http://www.pdr.net/pdr-consumer-monograph/lexapro?druglabelid=2214&ConsumerId=1642 (visited June 20, 2017).

[11]Zestril (generic name: lisinopril) is "an angiotensin-converting enzyme (ACE) inhibitor, used alone or in combination with other medicines to treat high blood pressure and heart failure." Id., http://www.pdr.net/pdr-consumer-monograph/zestril?druglabelid=2456&ConsumerId=1498 (visited June 26, 2017).

arm.  She said her feet are numb almost every day.  She testified that the pain in her back is sometimes aggravated by sitting down and always by twisting.

Plaintiff said she sometimes walks around at night to relieve cramps in her legs and feet.  (Tr. 68).  She stated that she has back spasms almost every day, which feel like someone is stabbing her in the joints and which she tries to relieve by moving around and taking medication.  (Tr. 68-69).  She said that her legs swell after any exertion and the pain feels like a million needles in her feet.  She said she sometimes urinates on herself when she coughs.

Daunie testified that Dr. Royster has recommended facet injections, epidural injections and a back brace, but she does not have to wear the brace all the time.  She said she wears it, but it hurts because it makes her stand up straight.  (Tr. 69-70).  She stated that Dr. Royster referred her to Dr. Waguespack after she told Dr. Royster that she was urinating involuntarily and that he commented, "I think it's time for surgery."  She testified that she does not want surgery.

Plaintiff said she might have one good day per week, but that she would not be able to walk the dog in a park even on a good day.  She said she never feels good enough for that.  She stated that a good day is one when she has a little relief and does not feel "like somebody's pulling out all my insides."  (Tr. 70).

Plaintiff testified that she does not sleep well because of pain in her side, the pulling feeling inside, and strong cramps in her legs and feet that wake her up every night and

cause her to get up and walk around. She said she elevates her feet at night and sometimes during the day. She said she spends the day moving around and trying to get comfortable.

Daunie stated that she used to work a lot, ran four miles around Lafreniere Park, walked the dog every night and watched her brother's children, none of which she can do anymore. (Tr. 71). She said she drives 15 to 20 minutes by herself to visit her mother, but occasionally has to stop, exit the car and stretch. (Tr. 71-72). She said she tried physical therapy for a couple of months, but could not tolerate it.

The ALJ said she wanted to see the report from plaintiff's December 2013 visit to Dr. Waguespack that is mentioned in the medical records and would hold the record open for Daunie's attorney to supply that report. (Tr. 72-73). The ALJ decided to send Daunie for a consultative examination because Dr. Royster's medical source statement said that plaintiff could never do many things, including gripping and stooping, which the ALJ said would preclude getting up and down from a chair and which the ALJ characterized as "totally out of the realm of normal, you know, everyday. I can understand she can't do it often, but to say never is not." (Tr. 75-76). The ALJ said she needed something more to justify granting plaintiff's application, either from Dr. Waguespack or a consultative examiner. (Tr. 76).

At the second hearing on September 24, 2014, a board-certified orthopedic surgeon, Dr. Frank Barnes (Tr. 46), participated by telephone. Daunie testified again that she had been in a work-related accident, has not settled her case and is still receiving worker's

compensation. She stated that she has "neck issues," her lower back hurts all the time bilaterally, but mostly on the right, and "it goes all in my legs and in my feet." She said that worker's compensation denies a lot of treatments, but that she sometimes receives cortisone shots in her back and had just received some the previous day. (Tr. 41).

Plaintiff confirmed that she had an MRI in November 2012 and that Dr. Waguespack had recommended a CAT scan, but that the request was denied. Daunie stated that she also had an EMG, which the ALJ noted had revealed chronic radiculopathy[12] at the L5 spine level. Daunie said she now has neck pain that prevents her from lying down or sleeping well. She stated that she cannot sit for long and that her back feels broken when she stands in one spot. (Tr. 42).

Daunie testified that she had physical therapy for a couple of months after the accident, but it did not help and made her hurt more. (Tr. 42-43). She stated that Dr. Royster is her treating physician and prescribes Norco and a muscle relaxer for her pain. She said that Dr. Royster changed the muscle relaxer to Zanaflex[13] and gave her trigger

---

[12]Radiculopathy is "irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root." MedlinePlus Medical Dictionary (Merriam-Webster, Inc. 2017), http://c.merriam-webster.com/medlineplus/Radiculopathy (visited June 15, 2017). Cervical radiculopathy "occurs when a nerve in the neck is compressed or irritated where it branches away from the spinal cord. This may cause pain that radiates into the shoulder, as well as muscle weakness and numbness that travel down the arm and into the hand." Orthoinfo.org (American Academy of Orthopaedic Surgeons 1995-2015), http://orthoinfo.aaos.org/PDFs/A00332.pdf (visited June 26, 2017).

[13]Zanaflex (generic name: tizanidine hydrochloride) is "used to manage muscle spasms . . . by relaxing your muscles, thereby relieving symptoms associated with muscle spasms." Id., http://www.pdr.net/pdr-consumer-monograph/zanaflex?druglabelid=811&ConsumerId=1638 (visited June 20, 2017).

point injections in her lower back the previous day and had given her trigger point injections in her neck a couple of months earlier because her arm felt like it was broken. (Tr. 43).

In response to questions from her attorney, plaintiff stated that she is in pain almost every day, but has some decent days.  She said she does not do much on decent days other than drive to her mother's house.  She testified that her pain is eight to nine on a scale of one to ten on an average day with medication.  She stated that it feels like someone is ripping her insides out when she lies down at night.  (Tr. 44).  Daunie said her pain starts at her neck, goes down to her lower spine and into her right leg.  She stated that she has tingling that feels like needles in her legs and feet and like someone is pulling out her calf muscles. (Tr. 45).

Daunie testified that, while she was still working in 2011 or 2012, she broke two bones in her wrist, had surgery the next day and went back to work in two weeks, so she has worked with pain before and knows what she can handle.  (Tr. 54-55).

C.    Medical Expert Testimony

Dr. Barnes testified that he is in active practice, is familiar with the medical considerations and listings in adult disability cases and had reviewed the medical records at Exhibits 1 through 13F.  He said that plaintiff has non-severe hypertension and a well-healed repair of the anterior cruciate ligament in her left knee.  According to the hearing transcript, which contains several transcription errors, Dr. Barnes testified that Daunie has

13

"spine-level [INAUDIBLE] and <u>spine-level weaknesses</u> at L5, S1, with <u>posture</u> arthritis.

Don't know if that helps.  L1 to L4.  She's had a fracture of her right wrist, has healed.

<u>Mid</u> range of motion."  (Tr. 46-47) (emphasis added to highlight transcription errors).  The

ALJ, who was present at the hearing, said in her decision that Dr. Barnes had stated that

Daunie "had <u>spondylolisthesis</u>[14] at L5-S1 and some <u>osteoarthritis</u>[15] from L1 to L4.  He noted

a healed fracture of the right wrist with <u>good</u> range of motion."  (Tr. 28) (emphasis added).

Dr. Barnes opined that plaintiff does not meet the physical requirements of Listing

1.04(A).  He limited Daunie to light work with the ability to lift 20 pounds occasionally and

10 pounds frequently.  He assessed no restrictions in walking, standing or sitting, and said

that plaintiff can occasionally bend, squat, stoop and work overhead or anywhere that she

has to bend backward.  (Tr. 47).  Dr. Barnes testified that, although some of Daunie's

physical examinations showed good range of motion, she has severe arthritis in her lower

back that makes the spaces in her back "a little small" and limits her ability to bend

backwards.  He stated that Daunie's arthritis is likely to be painful with constant or frequent

bending, stooping or similar movements.

---

[14] Spondylolisthesis is "forward displacement of a lumbar vertebra on the one below it and especially of the fifth lumbar vertebra on the sacrum producing pain by compression of nerve roots." <u>MedlinePlus Medical Dictionary</u>, http://www.merriam-webster.com/medlineplus/Spondylolisthesis (visited June 21, 2017).  An MRI of Daunie's lumbar spine revealed spondylolisthesis of the L5 vertebra on the S1 vertebra in November 2012.  (Tr. 256-58).

[15] Osteoarthritis is "characterized by progressive degenerative changes in the cartilage of one or more joints (as of the knees, hips, and hands) accompanied by thickening and overgrowth of adjacent bone and . . . marked symptomatically chiefly by stiffness, swelling, pain, deformation of joints, and loss of range of motion . . . ; called also degenerative arthritis, degenerative joint disease." <u>Id.</u>, http://c.merriam-webster.com/medlineplus/osteoarthritis (visited June 26, 2017).

Upon questioning by plaintiff's attorney, Dr. Barnes testified that it could be important to take a personal history from a patient regarding her complaints and diagnoses, and it can be helpful to examine a patient physically to form an impression. (Tr. 48-49). He confirmed that he had done neither of these things with Daunie because he would be forbidden to testify as an expert witness if he had done so.

In response to the attorney's question whether Daunie's x-ray and MRI results and physical examinations place her complaints of neck and back pain, radiculopathy, trouble with twisting her upper body and difficulty walking "out of the realm of possibility," Dr. Barnes testified:

> Most anything's possible, but the arthritis in her back does make it more believable that she has some pain running down her legs. Although some of the physical findings won't in that regard. So I couldn't really say she has radiculopathy from what I see here, other than the EMG and her complaints.

(Tr. 49). He stated that, in his experience with back injuries, pain levels vary from person to person. (Tr. 49).

Regarding Exhibit 11F, which is Dr. Royster's residual functional capacity assessment dated March 25, 2014 (Tr. 386-89), Dr. Barnes testified that Dr. Royster put Daunie's residual functional capacity at less than a sedentary level. (Tr. 50). Plaintiff's attorney recited a notation at page 9 of Exhibit 2F (treatment record of Paul B. Lansing, M.D., dated October 26, 2012, Tr. 266) that Daunie is to make limited use of her back, not bend and not lift more than two pounds, and asked Dr. Barnes whether the record provided a rational basis for the findings in Exhibits 11F and 2F. Dr. Barnes testified that the basis

15

of these findings was plaintiff's complaints. "You have the same x-ray findings and such, you have very different pain levels, and they just have to believe what she's telling them. I think that's the basis of their opinion." (Tr. 51). He agreed with the attorney that different doctors may have different estimations of what Daunie is capable of doing.

Upon further questioning by the ALJ, Dr. Barnes testified that he saw no evidence in the record to support Dr. Royster's opinion that Daunie cannot climb, balance, stoop, kneel, crouch or crawl or is limited in handling and fingering. (Tr. 51-52). He stated that plaintiff would have had trouble with fingering with one hand for about three months while her wrist fracture many years ago was healing, but she would have had no trouble using the other hand. He disagreed with Dr. Royster's opinion that Daunie must avoid all exposure to cold, vibration and hazards.

Upon re-cross examination by plaintiff's attorney, Dr. Barnes testified that drowsiness and difficulty concentrating can be side effects of Zanaflex and hydrocodone, but that most patients either adapt to this or the effect goes away after a period of usage. He stated that, if the effects do not go away and the patient needs to work around hazards, the patient should not continue taking the medication, but there are alternatives to try. (Tr. 53). He testified that most people with physical findings like plaintiff's can do the things that Dr. Royster said Daunie cannot, so Dr. Barnes said he cannot restrict her from activities like bending, squatting and stooping. (Tr. 53-54).

D.    <u>Vocational Expert Testimony</u>

A vocational expert, Elizabeth Wheeler, testified at the second hearing that Daunie's former work as a warehouse worker and local delivery driver was semi-skilled at a medium exertional level, while her courier job was unskilled and light.  (Tr. 73-74).  The ALJ posed a hypothetical of a person with the same age, education and work experience as Daunie who can perform sedentary work with no climbing, crouching or work on vibrating or uneven surfaces, and who can occasionally stoop, kneel and crawl.  Wheeler stated that such a person could not perform plaintiff's past relevant work, but would be able to work as a general clerk, information clerk or surveillance system monitor, all of which are available jobs in the national and state economies.  (Tr. 74).

Plaintiff's attorney asked Wheeler to consider a hypothetical person with the same residual functional capacity, but who also needs a sit and stand option; is limited in reaching in all directions, handling and fingering to ten percent of the day; and needs occasional breaks to elevate her feet to reduce swelling, numbness and tingling, which would require her to be off task up to one-third of the work day.  The vocational expert testified that such a person could not return to plaintiff's past relevant work and that no work would be available for a person with those limitations.  (Tr. 75).

D.    <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 26-29).  I find the ALJ's summary of the medical evidence

substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

    E.    <u>Plaintiff's Appeal</u>

        1.    <u>The Appeals Council did not err by failing to consider new and material evidence submitted after the ALJ's decision.</u>

Plaintiff argues that the Appeals Council erred by failing to consider, evaluate, discuss or include in the administrative record new medical evidence dated <u>after</u> the ALJ's decision, which Daunie submitted to the Appeals Council and attached to her memorandum in this court. Record Doc. No. 17-2. The records consist of (1) the responses, dated June 3 and 22, 2015, of pain management specialist Dr. Royster to lumbar and cervical "medical interrogatories" propounded to him by plaintiff's counsel with the specific goal of bolstering Dr. Royster's residual functional capacity opinions from March 2014 and countering Dr. Barnes's medical expert testimony, Record Doc. No. 17-2 at pp. 33-39; and (2) the treatment notes of Daunie's visits to orthopedic surgeon Dr. Waguespack between August 21 and December 23, 2015. <u>Id.</u> at pp. 1-32.

In denying plaintiff's request for review, the Appeals Council stated that the new evidence "does not affect the decision about whether [she was] disabled beginning on or before February 6, 2015," the date of the ALJ's decision, because the evidence "is about a later time." (Tr. 2). Daunie contends that the new medical records relate to the relevant time period and would likely change the outcome of the ALJ's decision if they were properly evaluated. She asks the court to remand her case to the Commissioner for that

purpose.  Based on my review of the record, I find that remand is not necessary for the following reasons.

First, it is well established that the Appeals Council is not required to discuss new evidence when it <u>denies</u> review, as opposed to reviewing the case and rendering a new decision affirming the ALJ's findings.

> When a claimant requests that the AC [Appeals Council] review an ALJ's decision, the AC "may deny a party's request for review <u>or</u> it may decide to review a case and make a decision."  20 C.F.R. § 404.981 (emphasis added). "When the Appeals Council makes a decision," . . . "it will follow the same rules for considering opinion evidence as [ALJs] follow."  20 C.F.R. § 404.1527; <u>see also</u> <u>Meyer v. Astrue</u>, 662 F.3d 700, 706 (4th Cir. 2011) ("Only if the Appeals Council <u>grants</u> a request for review and issues its own decision on the merits is the Appeals Council required to make findings of fact and explain its reasoning.").  The AC's decision then becomes binding unless the claimant seeks judicial review.  20 C.F.R. § 404.981.  On the other hand, when the AC denies the claimant's request for review, as it did in this case, that denial becomes part of the Commissioner's final decision, <u>Higginbotham [v. Barnhart</u>, 405 F.3d 332 (5th Cir. 2005)], 405 F.3d at 336-37, but the ALJ's decision remains binding, 20 C.F.R. § 404.981.

<u>Sun v. Colvin</u>, 793 F.3d 502, 511 (5th Cir. 2015).

> When confronted with new <u>and</u> material evidence, the Appeals Council "<u>shall evaluate</u> the entire record including the new and material evidence. . . . It will then <u>review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence</u> currently of record."  However, the regulations <u>do not require the Appeals Council to discuss the newly submitted evidence, nor is the Appeals Council required to give reasons for denying review</u>.

<u>Whitehead v. Colvin</u>, 820 F.3d 776, 780 (5th Cir. 2016) (quoting 20 C.F.R. § 404.970(b)) (citing <u>Sun</u>, 793 F.3d at 511) (emphasis added) (ellipses in original).  "Thus, it was not

error for the Appeals Council to omit a discussion of the additional treatment records submitted by" Daunie when it denied review in the instant case.  Id.

Second, contrary to plaintiff's argument, Higginbotham v. Barnhart, 405 F.3d 332 (5th Cir. 2005) ("Higginbotham I"), does not require this court to remand simply because the Appeals Council, in denying review, did not discuss the new evidence or include it in the administrative record.  Higginbotham I did not hold that the Appeals Council had failed properly to consider and evaluate treating source opinions dated after the ALJ's decision or that such evidence must be filed in the record.  Rather, the Fifth Circuit held that the district court had erred in failing to review the post-dated evidence that plaintiff had submitted to the Appeals Council, which the Appeals Council had "considered" when it denied plaintiff's request for review, but which the Appeals Council found provided no basis to reverse the ALJ's decision.  Id. at 334, 337.

The Fifth Circuit in Higginbotham I did not say whether the new evidence submitted to the Appeals Council was filed in the administrative record.  However, the regulations in effect in 2005 and at the time of the Appeals Council's denial of review in the instant case provided that, if a claimant "submit[s] evidence which does not relate to the period on or before the date of the administrative law decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence."  Morgan v. Colvin, No. 7:14-CV-090-BL, 2016 WL 1161912, at *4 (N.D. Tex. Mar. 24, 2016) (quoting 20 C.F.R. § 404.976(b)(1) (2014)) (emphasis added); accord Jones

v. Astrue, 228 F. App'x 403, 408 (5th Cir. 2007)  (quoting 20 C.F.R. § 416.1476(b)(1));

Clark v. Astrue, No. 2:09CV252-KS-MTP, 2010 WL 5107066, at *4 (S.D. Miss. Oct. 28,

2010), report & recommendation adopted, 2010 WL 5101391 (S.D. Miss. Dec. 9, 2010)

(quoting 20 C.F.R. § 404.976(b)(1)).  Recent revisions to the regulations eliminated the

provisions of 20 C.F.R. §§ 404.976(b)(1) (applicable to DIB) and 416.1476(b)(1)

(applicable to Supplemental Security Income) requiring that the Appeals Council return to

the claimant evidence that does not relate to the period on or before the ALJ's hearing

decision.  81 Fed. Reg. 90987-01, 2016 WL 7242991 (Dec. 16, 2016) (effective Jan. 17,

2017) (codified at 20 C.F.R. §§ 404.970(c), 416.1470(c) (2017)).[16]  It may be that in

Higginbotham I and other court decisions predating that revision, the new evidence

routinely was not filed in the record and was returned to the claimant when the Appeals

Council denied review, which would explain why those decisions do not even address

whether the evidence was in the record.

Nonetheless, the Fifth Circuit held in Higginbotham I that the court must examine

the later-submitted evidence when plaintiff argues that the Appeals Council erred by

denying her request for review despite the evidence.  "If additional evidence is presented

while the case is pending review by the Appeals Council, courts of appeals customarily

---

[16]The 2016 revisions also added a new requirement that a claimant requesting review on the basis of evidence that is new, material and relates to the period before the hearing decision must "show good cause for not informing us about or submitting the evidence" for one of five specific reasons.  81 Fed. Reg. 90987-01, 2016 WL 7242991 (Dec. 16, 2016) (effective Jan. 17, 2017) (codified at 20 C.F.R. §§ 404.970(b), 416.1470(b) (2017)).

review the record as a whole, including the new evidence, in order to determine whether the Commissioner's findings are still supported by substantial evidence." Higginbotham v. Barnhart ("Higginbotham II"), 163 F. App'x 279, 282 (5th Cir. 2006) (citing Higginbotham I, 405 F.3d at 337-38) (additional citations omitted).  The "after-submitted evidence considered by the Appeals Council constitutes part of the record upon which the final decision on eligibility is based, and . . . all record evidence, irrespective of its submission date, is subject to district court review" under the substantial evidence standard. Beck v. Barnhart, 205 F. App'x 207, 214 (5th Cir. 2006) (citing Higginbotham I, 405 F.3d at 337) (emphasis added).

        Following Higginbotham I and II, district courts in the Fifth Circuit have held that they should review the entire record, including the evidence submitted to the Appeals Council, to determine whether "the Appeals Council has failed to properly evaluate new medical evidence which is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination" and requires that the case "be remanded so that the Appeals Council fully can evaluate the treating source statement."  Booker v. Astrue, No. 3:10-CV-1940-P, 2011 WL 4031096, at *7 (N.D. Tex. Aug. 15, 2011), report & recommendation adopted, 2011 WL 4048408 (N.D. Tex. Sep. 12, 2011) (citations omitted) (emphasis added); accord Thornton v. Colvin, No. 15-0407, 2016 WL 1136627, at *13 (E.D. La. Feb. 29, 2016), report & recommendation adopted, 2016 WL 1110231 (E.D. La. Mar. 22, 2016); Sigala v. Colvin, No. 3:14-CV-3399-P BF, 2015 WL 5472861, at *5 (N.D.

Tex. July 28, 2015), <u>report & recommendation adopted</u>, 2015 WL 5472894 (N.D. Tex. Sept. 17, 2015); <u>see also</u> <u>Jones</u>, 228 F. App'x at 407 (The evidence submitted to the Appeals Council "<u>did not so contradict earlier evidence</u> that a 'weighing' of new and old evidence would be required." Remand was unnecessary when the new "report was . . . <u>not inconsistent</u> with" the evidence that the ALJ considered.) (emphasis added). In accordance with <u>Higginbotham I</u> and <u>II</u>, I have reviewed the medical records attached to Daunie's memorandum and find that they do not significantly undermine the ALJ's findings, which are still supported by substantial evidence, because the new evidence is not material and there is no reasonable possibility that it would change the outcome.

"The Appeals Council is permitted to consider additional evidence only if it is new, material, <u>and</u> related to the period on or before the ALJ's hearing decision." <u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 20 C.F.R. §§ 404.970(b), 404.976(B)) (emphasis added). This court may not issue factual findings on new medical evidence and may review such evidence only to determine if remand to the Commissioner is appropriate. <u>Id.</u>

"Evidence that was 'not in existence at the time of the administrative . . . proceedings, meets the "new" requirement for remand . . . .'" <u>Hunter v. Astrue</u>, 283 F. App'x 261, 262 (5th Cir. 2008) (quoting <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir.1989)); <u>accord</u> <u>Johnson v. Soc. Sec. Admin.</u>, 631 F. App'x 260, 262-63 (5th Cir. 2016) (citations omitted). However, "[e]vidence which is <u>merely cumulative</u> of that already in

the administrative record is not 'new' evidence that would support a remand under §

405(g)." Wilson v. Astrue, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27,

2009) (citing Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989); Bradley v. Bowen, 809

F.2d 1054, 1058 (5th Cir. 1987)) (emphasis added); accord Ferrari v. Astrue, 435 F. App'x

314, 314-15 (5th Cir. 2010); Haynes v. Astrue, No. 11-2289, 2012 WL 3860467, at *3

(E.D. La. July 23, 2012), report & recommendation adopted, 2012 WL 3863171 (E.D. La.

Sept. 5, 2012), aff'd, 519 F. App'x 258 (5th Cir. 2013).

New evidence must also be material to be the basis for a remand. The "materiality

inquiry requires determining whether the evidence relates to the time period for which the

disability benefits were denied." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003)

(citing Ripley, 67 F.3d at 555); accord Joubert v. Astrue, 287 F. App'x 380, 383 (5th Cir.

2008). The new evidence cannot merely concern a subsequently acquired disability or the

deterioration of a condition that was not previously disabling. Id.; Garson v. Barnhart, 162

F. App'x 301, 303 (5th Cir. 2006) (citing Leggett v. Chater, 67 F.3d 558, 567 (5th

Cir. 1995)).

Further, "[f]or new evidence to be material, there must exist the reasonable

possibility that it would have changed the outcome of the Secretary's determination."

Hunter, 283 F. App'x at 262 (quotations omitted) (citing Latham v. Shalala, 36 F.3d 482,

483 (5th Cir. 1994)); accord Jones, 228 F. App'x at 406 (citing 28 U.S.C. § 405(g)).[17]

---

[17]The revised regulations now provide a stricter standard for new evidence. The Appeals Council
will review a case if it "receives additional evidence that is new, material, and relates to the period on

Daunie has not shown that the records post-dating the ALJ's opinion are material, as defined by the Fifth Circuit.  First, the relevant time period to establish disability is from plaintiff's alleged onset date of October 1, 2012 through February 6, 2015, the date of the ALJ's decision.  Dr. Royster's interrogatory responses are dated <u>four months after</u> the ALJ's decision, while Dr. Waguespack's records are dated <u>more than six to more than ten months after</u> the ALJ's decision.  Because none of the new medical records relate to the period for which benefits were denied, they are immaterial.  <u>Hernandez v. Astrue</u>, 278 F. App'x 333, 338 (5th Cir. 2008) (citing 20 C.F.R. § 404.1502); <u>Sanchez v. Barnhart</u>, 75 F. App'x 268, 270 (5th Cir. 2003) (citing <u>Shave v. Apfel</u>, 238 F.3d 592, 597 (5th Cir. 2001)).

Second, Daunie has failed to demonstrate a reasonable possibility that the new evidence would change the outcome.  The ALJ found that Daunie has severe impairments of degenerative disc disease of the lumbar and cervical spine, but that the record did not support plaintiff's allegations or Dr. Royster's original medical source statement of extreme functional limitations that would prevent Daunie from performing sedentary work with the restrictions in the ALJ's opinion.  To the extent Dr. Royster's answers to interrogatories contain new opinions that Daunie can sit, stand and/or walk, and lift and/or carry <u>less than</u> the limits stated in his original medical source statement dated March 25, 2014 (Tr. 386-

---

or before the date of the hearing decision, <u>and</u> there is a reasonable <u>probability</u> that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5) (2017) (emphasis added).  Because "material" is defined by the Fifth Circuit to include a reasonable <u>possibility</u> of a changed outcome, it remains to be seen how, or whether, the new regulations will affect that definition.

89), which the ALJ found to be entitled to very little weight, there is no reasonable possibility that the result would change if the ALJ considered the new opinions.

Most importantly, the new evidence is merely cumulative of the medical records during the relevant time period that the ALJ considered. Based in large part on the consultative examination by Donald C. Faust, M.D, an orthopedic surgeon, on June 4, 2014 (Tr. 412-13); the expert testimony of orthopedic surgeon Dr. Barnes, who reviewed the entire medical record as of September 24, 2014; and Dr. Royster's own treatment notes, the ALJ accorded very little weight to Dr. Royster's medical source statement, which limits Daunie to much less than sedentary work. Dr. Royster's answers to plaintiff's medical interrogatories are based on the same treatment notes, findings and test results that the ALJ and Dr. Barnes reviewed and regarding which the ALJ already resolved any conflicts in the evidence. As to Dr. Waguespack's new treatment notes, Daunie even argues that they contain the same or substantially similar findings to those in the medical records that the ALJ reviewed, Record Doc. No. 17-1 at pp. 8-9, indicating that the new notes are merely cumulative of existing evidence. There is no reasonable possibility that cumulative evidence would change the outcome. Lenoir v. Apfel, 234 F.3d 29, 2000 WL 1568184, at *1 (5th Cir. Sept. 14, 2000) (citing Haywood, 888 F.2d at 1471; Pierre, 884 F.2d at 803).

Contrary to plaintiff's argument, this case is not similar to Sun, in which the Fifth Circuit "concluded that [the] new records create[d] considerable uncertainty regarding the ALJ's findings that the plaintiff was able to" perform light work, and therefore remanded

26

for the Commissioner to consider the new evidence.  Whitehead, 820 F.3d at 780 (citing

Sun, 793 F.3d at 512) (quotation omitted).  In Daunie's case, "as contrasted with the facts

in Sun, the newly submitted medical records largely confirm the evidence already

contained in the record.  Accordingly, we conclude that the newly submitted evidence was

not so significant as to require remand to the ALJ for additional consideration."  Id.; see

also id. at n.1 (citations omitted) ("Having already concluded that [plaintiff's] newly

submitted evidence was not sufficiently significant to require remand . . . , we also reject

[plaintiff's] contention that . . . the newly submitted evidence directly contradicted the

ALJ's rationale such that remand is required.").

Daunie has not shown that the new evidence she submitted to the Appeals Council

is material.  Accordingly, this assignment of error lacks merit.

>    2.    The ALJ did not err by finding that Daunie does not meet Listing
>          1.04(A) for disorders of the spine.

The ALJ found at the third step of the sequential evaluation that Daunie does not

have an impairment or combination of impairments that meets or medically equals one of

the listed impairments for presumptive disability, including Listing 1.04.  Plaintiff argues

that the ALJ erred by not specifically discussing the medical evidence supporting her step

three finding that Daunie does not meet Listing 1.04(A) and that she meets the listing.

Listing 1.04(A) for spinal disorders, such as herniated nucleus pulposus, spinal

stenosis, osteoarthritis, degenerative disc disease or facet arthritis, requires compromise of

a nerve root or the spinal cord, with "[e]vidence of nerve root compression characterized

by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04(A).

Whether an impairment or combination of impairments meets a listing is a medical question that can be answered <u>only</u> by medical evidence. 20 C.F.R. §§ 404.1526(b), 416.926(b); <u>McCuller v. Barnhart</u>, 72 F. App'x 155, 158 (5th Cir. 2003); <u>Selders v. Sullivan</u>, 914 F.2d 614, 619 (5th Cir. 1990); <u>McKnight v. Astrue</u>, No. 07-1654, 2008 WL 4387114, at *3 (W.D. La. Aug 15, 2008), <u>report & recommendation adopted</u>, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), <u>aff'd</u>, 340 F. App'x 176 (5th Cir. 2009). "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary." <u>Anderson v. Astrue</u>, No. 3:11-CV-0051-K-BH, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), <u>report & recommendation adopted</u>, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532 (1990); <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir. 1994)).

Thus, Daunie must identify specific medical evidence demonstrating that she meets <u>all</u> the criteria of Listing 1.04(A), but has failed to do so. As discussed in the preceding section of this report and recommendation, the new evidence submitted to the Appeals Council is not material, is not reasonably likely to change the outcome of the ALJ's

decision and cannot form the basis for a remand. The court finds that substantial medical evidence in the record before the ALJ supports her step three finding.

The ALJ afforded "great weight" to the opinions of consultative examining orthopedic surgeon Dr. Faust and testifying orthopedic surgeon Dr. Barnes and "very little weight" to Dr. Royster's checklist form opinions on his medical source statement dated March 25, 2014. (Tr. 30). Dr. Faust examined plaintiff on June 4, 2014. (Tr. 412-13). Although Daunie had some spinal tenderness, Dr. Faust found no spasm, atrophy or limitations in range of motion in her back, neck, extremities and joints. He opined that plaintiff has "complaints of pain with no specific pathologic findings." He questioned the inconsistency between Daunie's positive straight leg raising test in the supine position and her negative straight leg raising test in the sitting position, and he felt that she "shows an effort to bias the examination" with respect to significantly differing grip strength results in her hands. Dr. Faust concluded that Daunie "shows no radiculopathy and she does not appear to be a candidate for any treatment or restrictions." (Tr. 413). He completed a medical source statement that assessed no functional limitations. (Tr. 415-20).

Dr. Barnes reviewed all of the medical records as of September 24, 2014, including Dr. Royster's medical source statement, and stated that objective testing showed that Daunie has spondylolisthesis and osteoarthritis. The ALJ mentioned these findings in her summary of the medical evidence. (Tr. 26, 28). Dr. Barnes opined that plaintiff does not meet the physical requirements of Listing 1.04(A) because she can lift 20 pounds

occasionally and 10 pounds frequently; has no restrictions in walking, standing or sitting; and can occasionally bend, squat, stoop and work overhead or anywhere that she has to bend backward. He testified that Daunie has severe arthritis in her lower back that makes the spaces in her back "a little small" and limits her ability to bend backwards and that her arthritis is likely to be painful with constant or frequent bending, stooping or similar movements. Dr. Barnes found it "believable" that Daunie has some pain radiating down her legs, but noted that some of her physical examination findings showed good range of motion and did not support the extent of her complaints. Although he acknowledged that her EMG results showed some lumbar radiculopathy, he opined that the findings did not support the extent of her complaints. Dr. Barnes testified that he saw no evidence in the record to support Dr. Royster's opinion that Daunie cannot climb, balance, stoop, kneel, crouch or crawl or is limited in handling and fingering. He testified that most people with findings like plaintiff's can do the things that Dr. Royster said Daunie cannot. Thus, based on her physical findings, Dr. Barnes did not restrict plaintiff from activities like bending, squatting and stooping.

The opinions of Drs. Faust and Barnes and other medical evidence in the record, including the records of orthopedic surgeon, Dr. Nutik, who treated plaintiff in November 2012 through January 7, 2013 (Tr. 291-315), and of another pain management specialist, Joseph Crapanzano, Jr., M.D., who examined Daunie on March 26, 2014 (Tr. 469-71), substantially support the ALJ's finding that plaintiff does not meet Listing 1.04(A). All of

those physicians found little in the way of physical limitations and few objective findings

to support Daunie's subjective complaints.

The ALJ accurately summarized of the voluminous medical evidence, including the

objective test results that plaintiff incorrectly claims the ALJ ignored.  The ALJ's failure

to discuss particular evidence in making a specific finding "does not necessarily mean that

[s]he failed to consider it, and the ALJ's decision states explicitly that [s]he considered the

entire record in [her] decision."  Hammond v. Barnhart, 124 F. App'x 847, 851 (5th Cir.

2005).  Procedural perfection in administrative proceedings is not required as long as the

substantial rights of a party have not been affected.  Hurst v. Colvin, 639 F. App'x 1018,

1021 (5th Cir. 2016) (citing Audler, 501 F.3d at 448) (additional citations omitted).  "The

fact that the ALJ cited certain evidence that [s]he felt supported [her] decision does not

mean that [s]he failed to consider all of the other evidence in the record."  Brunson v.

Astrue, 387 F. App'x 459, 461 (5th Cir. 2010); accord Castillo v. Barnhart, 151 F. App'x

334, 335 (5th Cir. 2005) (citing Falco, 27 F.3d at 163). Daunie has not shown that she was

prejudiced by the ALJ's failure to discuss specific medical evidence at the third step.

Because substantial evidence supports the ALJ's finding that plaintiff does not meet

Listing 1.04(A), this assignment of error lacks merit.

3.    The ALJ properly weighed the medical evidence when determining
      plaintiff's residual functional capacity.

The ALJ found that Daunie has the residual functional capacity to perform sedentary

work, except that she cannot climb ladders, ropes, or scaffolds; and can stoop, kneel,

crouch and crawl only occasionally.  Plaintiff argues that this finding is not supported by substantial evidence because the ALJ improperly afforded great weight to the opinions of Dr. Barnes and Faust and very little weight to those of Dr. Royster.

The ALJ's residual functional capacity findings are supported by substantial evidence.  She acknowledged that Daunie's severe impairments of degenerative cervical and lumbar disease could reasonably be expected to cause some of the alleged symptoms, but found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.

The mere diagnosis of and treatment for an impairment, such as degenerative disc disease and radiculopathy in this case, does not establish a claimant's disability claims. Bordelon v. Astrue, 281 F. App'x 418, 422 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon, 184 F. App'x at 431; Harris v. Barnhart, 65 F. App'x 129, 132 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)).  "If a claimant has a degenerative or ongoing impairment, the relevant inquiry is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition."  McLendon, 184 F. App'x at 431.  Plaintiff "'must show that she was so functionally impaired [by her diagnosed

impairment] that she was precluded from engaging in any substantial gainful activity.'"
Bordelon, 281 F. App'x at 422 (quoting Hames, 707 F.2d at 165) (emphasis added); accord
Taylor v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012); Randall v. Astrue, 570 F.3d 651, 658-
59 (5th Cir. 2009); Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992); Hamauei v.
Astrue, No. 10-85, 2011 WL 802398, at *7 (E.D. La. Feb. 28, 2011) (quoting Hames, 707
F.2d at 165).

Determining the credibility of plaintiff's subjective evidence of pain and disability
is a necessary part of the ALJ's consideration of the evidence. Luckey v. Astrue, 458 F.
App'x 322, 326 (5th Cir. 2011) (citing Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985));
Perez, 415 F.3d at 462. The ALJ is bound to explain her reasons for rejecting a claimant's
subjective complaints, but "is not required to 'follow formalistic rules in [her]
articulation.'" Hernandez, 278 F. App'x at 339 (quoting Falco, 27 F.3d at 164). The ALJ
has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309
F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of
determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x
356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility
evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F.
App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236
F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459). The ALJ's
explanation of her reasons for finding plaintiff not entirely credible is all that is required.

Undheim v. Barnhart, 214 F. App'x 448, 450-51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); Falco, 27 F.3d at 164); James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

"And the ALJ is 'entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" Williams v. Colvin, 575 F. App'x 350, 354 (5th Cir. 2014) (quoting Greenspan, 38 F.3d at 237).

The ALJ in the instant case followed these principles, explaining that the medical records, which she accurately summarized, did not substantiate that plaintiff had problems as serious as she testified or limitations as extreme as Dr. Royster assessed, and that, as Dr. Barnes testified, the records include objective findings on examination indicating that Daunie did not have such severe limitations.  The ALJ accorded "great weight" to the opinions of Drs. Barnes and Faust, which, as discussed above, are substantially supported by the medical evidence.  Dr. Barnes testified that Dr. Royster's opinion of plaintiff's limitations appeared to be based on her subjective complaints, that she had good range of motion in her back during physical examinations and that she did not appear to have radiculopathy.  Although Dr. Barnes opined that Daunie could perform a reduced range of light work, the ALJ assessed a residual functional capacity for a reduced range of sedentary work, indicating that she accepted some more restrictive limitations based on the other evidence.

34

The ALJ accorded "very little weight" to the opinions of Dr. Royster on a checklist form Medical Source Statement because the extreme limitations he assessed were inconsistent with his own treatment notes. On the checklist form, Dr. Royster restricted plaintiff to less than a full range of sedentary work on less than a full-time basis because of chronic pain from severe degenerative disease of the lumbar and cervical spine, with manipulative limitations on reaching in all directions, handling, fingering and feeling. (Tr. 386-89). The ALJ discounted Dr. Royster's opinions because, as she accurately stated, his physical examination notes revealed slightly diminished findings on range of motion testing; no spasms or atrophy; positive straight leg raising on some, but not all, examinations; and no positive findings with respect to her hands and wrists. (Tr. 30).

Appellate courts, including the Fifth Circuit, have often held that checklist opinions are unworthy of credence when they are not adequately supported by or are inconsistent with the medical records. See Foster v. Astrue, 410 F. App'x 831, 833 (5th Cir. 2011) ("[T]he 'questionnaire' format typifies 'brief or conclusory' testimony. . . . [W]e agree with the magistrate judge's conclusion that 'due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations, [the treating physician's] opinion is given little weight.'"); Peck v. Barnhart, 214 F. App'x 730, 738 (10th Cir. 2006) (The ALJ provided legitimate reasons for rejecting a doctor's opinion consisting "of checked boxes and circled numbers on a form" when the "opinion was not supported with additional explanation" nor justified by the doctor's treatment notes.);

Holmstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) ("the checklist format, generality, and incompleteness of the assessments limit their evidentiary value"); Johnson v. Apfel, 189 F.3d 561, 564 (7th Cir. 1999) (upholding ALJ's rejection of physician's check-box form when it was contradicted by evidence in the record); Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (quotation omitted) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. . . . [When] these so-called reports are unaccompanied by thorough written reports, their reliability is suspect . . . ."); Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987) ("Such evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."); cf. Larson v. Astrue, 615 F.3d 744, 751 (7th Cir. 2010) (citing Johnson, 189 F.3d at 564; Mason, 994 F.2d at 1065) ("Although by itself a check-box form might be weak evidence, the form takes on greater significance when it is supported by medical records. . . . Here, there is a long record of treatment by [the treating physician] that supports his notations on the form.").

As she is obligated to do, the ALJ weighed conflicting medical opinions and resolved the conflict in favor of the opinions of Drs. Faust and Barnes. Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)). "Though the ALJ appears to have given less weight to the treating physician's opinions than to those of the medical expert called at the hearing, '[c]onflicts of evidence are for the Commissioner, not

the courts, to resolve.'" Byrd v. Comm'r of Social Sec., 368 F. App'x 542, 543 (5th Cir. 2010) (quoting Perez, 415 F.3d at 461).   "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Newton, 209 F.3d at 455 (quotation omitted).

The ALJ incorporated in plaintiff's residual functional capacity determination all of the symptoms and functional limitations that she found credible, based on the entire record and especially the opinions of Drs. Barnes and Faust, on which the ALJ appropriately relied.  The ALJ applied the proper legal principles in weighing the medical evidence and resolving conflicts.  She determined Daunie's residual functional capacity based on substantial evidence.  Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

The Appeals Council did not err by failing to consider new evidence because it was not material, as defined by the Fifth Circuit.  The ALJ's finding that Daunie's impairments do not meet Listing 1.04 is supported by substantial evidence.  The ALJ appropriately weighed the medical evidence when determining plaintiff's residual functional capacity.

**<u>RECOMMENDATION</u>**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14)

days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[18]

New Orleans, Louisiana, this ___29th___ day of June, 2017.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[18]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.